UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>DOUGLAS WORMAN,<br><br>　　　Defendant. | Case No. 2:23-cr-00136-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Douglas Worman's Motion to Exclude Statements. Dkt. 19. The Government opposed the motion (Dkt. 23) and Worman replied (Dkt. 32). The matter is now ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

MEMORANDUM DECISION AND ORDER - 1

Court GRANTS the Motion.[2]

## II. BACKGROUND

### A. Factual Background

The following facts are set forth in the Indictment in this case. Dkt. 2. Defendant Douglas Worman owned and operated Worman Forest Management, a forestry business based in Idaho. Worman financed his business activities in part through a factoring agreement with the putative victim (the "Victim Company") and his company. Under this agreement, Worman submitted copies of customer invoices to the Victim Company, and the Victim Company paid Worman 75% of the face value of the invoices up front. Once customers paid Worman, he paid the entire invoice amounts to the Victim Company, which in turn paid back to Worman the amount of the invoices less the Victim Company's factoring fee and the 75% it fronted to Worman.

Throughout the time the factoring agreement was in place, Worman had been inflating and fabricating many of the customer invoices he submitted to the Victim Company, as well as engaging in check kiting, wherein he floated checks between multiple bank accounts with insufficient funds to inflate the funds available to him.

In January 2022, the Government served Worman's then counsel Nick Vieth[3] with a target letter indicating that the government intended to seek an indictment against the

---

[2] In an effort to give the parties direction on the evidentiary issues raised in Worman's Motion, the Court will set forth its views based on the information presently before the Court. These rulings, however, are preliminary and may be subject to revision upon consideration of a particular evidentiary issue presented within the context of the trial.

[3] Vieth has since withdrawn as Worman's counsel this case. Dkts. 17, 18. Worman is now represented by K. Jill Bolton and Taylor Ogborn.

Worman for wire fraud. In that letter, the Government invited Vieth to notify the Government if he "would like to discuss a pre-indictment resolution." Dkt. 24, at 1. Vieth responded, indicating Worman's interest in discussing "early resolution" of the impending charges. Dkt. 32, at 6.

The ensuing communications between Vieth and the Government took place primarily in an email thread titled with the subject line "Worman: resolution discussion." Dkt. 32, at 7. In that thread, Vieth sought to dissuade the Government from charging his client or, alternatively, to accept pretrial diversion. In the course of these negotiations, Vieth also provided the Government with copies of a report completed by Worman's investigator, William Long, and a letter written by Worman's accountant, Brian Tenney. Both Tenney and Long were hired by Worman to prepare reports to assist him in calculating a reasonable offer to settle the amount he owed to the Victim Company.

In late 2022, the parties arranged an interview of Worman to be held in December at the USAO offices in Coeur d'Alene. Worman, his wife, Tenney, Long, and Vieth were all in attendance, as well as AUSA Brittney Campbell and FBI Agent Gunnerson for the government. During that meeting, Worman made a variety of disclosures, including that he had provided false and inflated invoices to the Victim Company. At the conclusion of the meeting, Vieth proposed a potential resolution involving a plea deal wherein his client would plead guilty to a tax misdemeanor. The Government rejected this proposal.

After the December meeting, Vieth renewed his request for pretrial diversion, which the Government again turned down. Notably, in an email from AUSA Campbell to Vieth shortly after the December meeting, Campbell stated "[i]f you are interested in further plea

MEMORANDUM DECISION AND ORDER - 3

discussions in terms of a one-count felony, please let me know." Dkt. 32, at 11–12. Vieth rejected the proposal for a felony plea, again requesting either a misdemeanor plea or pre-trial diversion.

On May 17, 2023, Campbell notified Vieth that a federal grand jury had returned an indictment against Worman charging him with seventeen counts of wire fraud, four counts of bank fraud, one count of false statement to a bank, and one allegation of fraud forfeiture. Dkt. 2-1, at 1. The case is set for trial to begin on August 5, 2024. Dkt. 22. Worman filed the present Motion to Exclude Statements on May 9, 2024, arguing that the communications described above constitute inadmissible plea negotiations and settlement negotiations under Federal Rules of Evidence 408 and 410. Dtk. 19. The Government opposed the Motion. Dkts. 23, 24. After requesting a deadline extension, which the Court granted, Worman replied. Dkt 28.

### III. LEGAL STANDARDS

#### A. Motions in Limine[4]

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (*citing United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a

---

[4]Although Worman did not expressly style his Motion as a motion in limine, the substance of the motion deals with evidentiary disputes in advance of the impending trial in this case. Accordingly, the Court treats the motion as one in limine.

MEMORANDUM DECISION AND ORDER - 4

procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 492 (9th Cir. 1989) (cleaned up), a district court has discretion in ruling on a motion in limine. *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

**B. Rule 410**

Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) exclude from admission into evidence statements made by a criminal defendant during plea negotiations. In the Ninth Circuit, "[a] statement to a U.S. Attorney is inadmissible when made in the course of plea discussions if (1) the suspect exhibited an actual subjective expectation that he was negotiating a plea at the time of the discussion and (2) his expectation was reasonable given the totality of the circumstances." *United States v. Zamastil*, 550 Fed. Appx. 446, 448 (9th Cir. 2013) (cleaned up).

**C. Rule 408**

Federal Rule of Evidence 408 governs the admission of evidence related to compromise offers and negotiations. Rule 408 generally prohibits the admission of "conduct or a statement made during compromise negotiations about the claim" when offered for impeachment or to prove the validity of a claim. Fed. R. Evid. 408(a)(2).

MEMORANDUM DECISION AND ORDER - 5

However, the Rule has an exception, allowing such evidence to be admitted "when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority." *Id.*

## IV. ANALYSIS

In his Reply brief, Worman clarifies that the statements he specifically seeks to exclude are: (1) the written report from Worman's investigator supplied to the Government by Worman's counsel; (2) the letter from Tenney provided to the Government by Worman's counsel; and (3) statements Worman made during the December 2022 meeting with the Government.[5]

### A. Rule 410

Worman argues that all pre-indictment negotiations between his counsel and the Government constitute plea negotiations and are therefore inadmissible under Rule 410. As noted, in the Ninth Circuit, disclosures to a US Attorney are inadmissible when a defendant subjectively believes he is engaging in plea negotiations and that belief is objectively reasonable. *Zamastil*, 550 Fed. Appx. at 448. Thus, to determine whether the conversations between Worman and the government are admissible under Rule 410, the Court must analyze both Worman's subjective belief and the reasonableness of that belief.

In support of the contention that he believed he was engaging in plea negotiations, Worman submits affidavits from himself, Vieth, and Investigator Long. Dkts. 32-1, 32-2,

---

[5] In Worman's initial Motion, he requests the exclusion of "all statements the Defendant and his agents made during all pre-Indictment attempts to resolve the case" as set forth in an eight-page declaration from Vieth. Dkt. 19, at 1. However, because he later narrowed his request to these three statements, the Court will limit its ruling to these three specific instances.

MEMORANDUM DECISION AND ORDER - 6

32-3. Each individual indicates he believed that the discussions in the December 2022 meeting were plea negotiations. The Court finds these sworn affidavits sufficient to demonstrate Worman's actual subjective belief that he was negotiating a plea at the time of these discussions.

Worman also contends that his belief was reasonable in light of the totality of the circumstances. The Government counters that the facts here cannot support a reasonable belief that Worman was engaged in plea negotiations. Dkt 23, at 13–14. To support its position, the Government relies on three Ninth Circuit cases.

In *United States v. Leon Guerrero*, the defendant made an offer to "cooperate" with a criminal investigation (for example, by taking a polygraph examination), but the government made no mention of potential charges or pleas until nearly six months later. 847 F.2d 1363, 1368 (9th Cir. 1988). The Ninth Circuit found the offer to cooperate with the investigation, insufficient to constitute a plea discussion under Rule 410. *Id.* In *United States v. Doe*, the Ninth Circuit found no plea discussions in part because there was no evidence that the defendant "ever pled or offered to plead guilty." 655 F.2d 920, 925 (9th Cir. 1980). Similarly, in *United States v. Drummond*, the Ninth Circuit found no plea discussions where the defendants had expressed no intention to plead guilty or make an admission in exchange for a concession, but rather sought "outright surrender" from the Government. 1993 WL 533429, at *3 (9th Cir. Dec. 23, 1993).

The facts here are distinct. Unlike the defendant in *Leon Guerrero*, Worman did not merely agree to cooperate with the Government's investigation in the absence of any potential charges. Rather, with the Government's clear indications of intent to file charges,

MEMORANDUM DECISION AND ORDER - 7

Worman's counsel proposed pretrial diversion, a potential plea agreement, or other pre-indictment resolution on multiple occasions. Worman's actions are also distinguishable from *Doe*. That defendant never offered to plead guilty, *see* 655 F.2d at 925, but Worman (through his counsel) offered to do so multiple times. And distinct from *Drummond*, Worman's counsel repeatedly indicated his client's willingness to entertain a plea or other pre-trial resolution in exchange for concessions from the government.

Perhaps most indicative of the reasonableness of Worman's belief are AUSA Campbell's own statements in a follow-up email to Vieth shortly after the December meeting: "I spoke with my deputy and it's a no-go on the diversion . . . . If you are interested in further plea discussions in terms of a one-count felony, please let me know." Dkt. 32-1, at 35. Campbell's mention of *further* plea discussions betrays an understanding that *prior* plea discussions had already been taking place. This suggests that while the back-and-forth between Vieth and the Government was taking place, the Government was likewise under the impression that those conversations were plea discussions. It seems to the Court that the Government's affirmative representation that plea discussions were underway certainly gives rise to a reasonable basis for a defendant's belief that he is, in fact, participating in plea negotiations.

The evidence before the Court contradicts the Government's argument and supports a finding of reasonableness here. The Target Letter from the Government to Worman invited Worman "to discuss a pre-indictment resolution." Dkt. 23, at 4. Vieth responded to that invitation by requesting pretrial diversion conditioned on resolution of Worman and the victim's civil dispute. That the government did not accept Vieth's proposal does not

negate the fact that it opened the door to negotiations, and Worman accepted that invitation.

Additionally, the bulk of the pre-indictment communications between Vieth and Hurwit were contained in an email thread titled "Worman: resolution discussion." Dkt. 32, at 7. Vieth indicated his client's willingness to enter a plea to a misdemeanor tax offense or otherwise resolve the charges pre-trial multiple times in the course of these email communications. Further, Worman also hired agents Long and Tenney to assist him with calculating a reasonable amount to settle his dispute with the Victim Company.

The totality of the circumstances surrounding the December 2022 meeting also support the reasonableness of Worman's belief that he was engaging in plea negotiations. According to the Government's recounting, Worman made a series of admissions during the meeting. At the end of the meeting, Vieth again proposed a plea deal wherein Worman might be willing to plead guilty to a tax misdemeanor. Following the meeting, the government invited "further" plea discussions.

Because Worman had the subjective belief that he was engaging in plea negotiations, and because that was reasonable in light of the circumstances described above, this evidence is inadmissible under Rule 410. *See Zamastil*, 550 Fed. Appx. at 448. The Court will GRANT Worman's Motion and exclude the plea discussions.

### B. Rule 408

The Government argues that Rule 408 applies only to compromise offers and negotiations of a *civil* claim, and that because its communications with Worman always related to the *criminal* charges in this case, the rule is inapplicable here. Dkt. 23, at 2 n.1.

This case does not fit neatly within the purview of Rule 408, which is typically applied

MEMORANDUM DECISION AND ORDER - 9

to exclude evidence of civil negotiations in a subsequent criminal prosecution. Here, Worman seeks to exclude statements gathered in *criminal* compromise negotiations from evidence in that same criminal case. However, the Court need not decide whether Rule 408 applies to these facts, because it has already determined that the negotiations at issue are plea discussions under Rule 410 and are therefore inadmissible.

## V. CONCLUSION

Worman has established his subjective belief that his (and his counsel's and agents') pre-indictment discussions with the Government were plea negotiations. Additionally, the totality of the circumstances surrounding those discussion support a finding that Worman's belief was reasonable. Accordingly, the Court finds these negotiations constitute plea negotiations and under Rule 410 must be excluded from trial.

The Court notes that its ruling is limited only to conduct and statements made during settlement negotiations between Worman (and his agents) and the Government. Investigator Long and CPA Tenney may still testify as to their own investigations, findings, and impressions so long as they do not venture into discussions about the December 2022 meeting or other communications they exchanged with the Government for purposes of negotiating a resolution to the case.

///

///

///

## VI. ORDER

The Court HEREBY ORDERS:

1. Worman's Motion to Exclude Statements (Dkt. 19) is GRANTED as outlined herein.

DATED: July 9, 2024

_____
David C. Nye
Chief U.S. District Court Judge