UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DOUGLAS WORMAN,<br><br>    Defendant. | Case No. 2:23-cr-00136-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Douglas Worman's Motion to Disqualify. Dkt. 29. The Government opposed the motion (Dkt. 34) and Worman replied (Dkt. 40). The matter is now ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are

DENIES the Motion.

## II. BACKGROUND[2]

In September 2018, a victim in this case filed a police report with the Kootenai County Sheriff's Office, alleging Worman's business had stolen more than three million dollars from the victim and his company. In October 2018, FBI Special Agent Gunnerson met with the Sheriff's Office and referred the matter to the FBI. A few weeks later, after opening a fraud investigation, Special Agent Gunnerson notified the branch manager of the Coeur d'Alene branch of the United States Attorney's Office for the District of Idaho (the "CDA AUSA") that the case had been opened. The CDA AUSA notified Special Agent Gunnerson that the CDA office was recused and instructed him to send all case-related information to the Boise office. The case was assigned to Joshua Hurwit, at the time a line AUSA in the Boise office, who handled the case from November 2018 through June 2022, when he was confirmed as Idaho's U.S. Attorney. The case was subsequently transferred to Brittney Campbell, a line AUSA who joined the Boise office in August 2022.

On June 21, 2024, Worman filed the present Motion, seeking disqualification of the entire USAO for the District of Idaho because of two alleged conflicts: (1) Hurwit and Campbell are necessary witnesses in this case, and (2) one of the CDA AUSAs is a personal friend of one of Worman's alleged victims. Dkt. 29. The Government opposed the Motion. Dkt. 34. Before Worman replied, the Court issued its Order on Worman's then-pending

---

otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

[2] The Court provided an overview of the facts underlying Worman's Indictment in its recent Order granting Worman's Motion to Exclude Statements. *See* Dkt. 39, at 1–3. To avoid redundancy, the Court generally recites only the facts pertinent to this Motion herein.

Motion to Exclude Statements, which in part addressed conduct and statements by Campbell and Hurwit relevant to Worman's arguments in his Motion to Disqualify. Dkt. 39. In light of the Court's Order on the Motion to Exclude, Worman withdrew his arguments regarding Campbell and Hurwit in his Reply. Dkt. 40. However, Worman maintains that the CDA AUSA's relationship with a victim creates a conflict that mandates disqualification of the entire USAO for the District of Idaho.[3] *Id.*

### III. LEGAL STANDARDS

#### A. Motions to Disqualify

Disqualifying counsel is an exercise of the court's inherent powers. *Andersen v. Valley Cty*, 2017 WL 2311668, at *3 (D. Idaho May 26, 2017). "The decision to grant or deny a motion to disqualify counsel is within the discretion of the trial court." *Foster v. Traul*, 175 P.3d 186, 194 (Idaho 2007) (cleaned up). Under Idaho law, "[t]he moving party has the burden of establishing grounds for the disqualification." *Crown v. Hawkins Co.*, 910 P.2d 786, 794 (Idaho Ct. App. 1996). Additionally, because misuse of disqualification motions for gamesmanship is costly to both clients and the judicial system, such motions "should be subjected to particularly strict judicial scrutiny" *Optyl Eyewear Fashion Int'l Corp. v. Style Co.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citations omitted).

"Disqualification of an entire U.S. Attorney's Office is an extreme remedy—only appropriate in the most extraordinary circumstances." *United States v. Williams*, 68 F.4th

---

[3] The Government filed a notice indicating Worman made new arguments in his Reply, and that it would be willing to provide a sur-reply if the Court so desired. Dkt. 41. Given the clear state of the law on this issue, the Court finds additional briefing from the Government unnecessary.

564, 573 (9th Cir. 2023). The Ninth Circuit has set forth a two-part requirement for disqualifying an entire U.S. Attorney's Office. "First, a district court must find a strong factual predicate for blanket disqualification. Second, a district court must determine that the U.S. Attorney's Office's continued representation of the government will result in a legal or ethical violation." *Id.* To reach such a conclusion, the Court must also determine that any conflict "so pervades the office that less intrusive remedies would be inadequate to safeguard against a legal violation." *Id.*

The Court may only make a blanket disqualification after making these "exacting findings"; it may not "disqualify an entire office of federal prosecutors merely as a precautionary measure." *Id.* at 573–74. The Ninth Circuit has warned against the "risk of offending separation-of-powers principles when disqualifying an entire office of Executive branch attorneys." *Id.* at 572. Because of this risk, "[s]uch sweeping interference is seldom warranted. Indeed, every circuit court that has reviewed an officewide disqualification has reversed." *Id.*

### B. Rule 1.7(a)(2)

Rule 1.7(a)(2) of the Idaho Rules of Professional Conduct provides, in pertinent part, that a lawyer shall not represent a client if the representation involves a risk of concurrent conflict of interest. Such a conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by" the lawyer's personal interests, "including family and domestic relationships." Idaho Rule of Professional Conduct 1.7(a)(2).

## IV. ANALYSIS

Worman argues disqualification is required by Idaho Rule of Professional Conduct 1.7(a)(2) because the CDA AUSA had a personal relationship with a victim in this case. Further, Worman suggests this purported conflict may be imputed to the entire USAO for the District of Idaho because: (1) the Government has not adequately detailed how it "walled-off" the CDA AUSA to prevent a conflict, and (2) the very fact he is being prosecuted evidences the entire district's vindictiveness against him.

As a preliminary matter, the Court notes Worman's argument that the Government has not adequately shown the absence of a conflict warranting disqualification confuses which party bears the burden of proof. Worman filed the Motion to Disqualify, and the burden to establish grounds for disqualification is his. *See Crown*, 910 P.2d at 794. That burden is particularly heavy here, where the Ninth Circuit has set forth an exacting two-part test for the disqualification of an entire USAO. *Williams*, 68 F.4th at 572. The Court finds Worman has failed to satisfy this test.

For one thing, Worman has not offered any facts describing the nature of the alleged relationship between the victim and the CDA AUSA, or how that relationship creates a conflict of interest. For another, he has not demonstrated why that purported conflict should be imputed to the entire USAO for the District of Idaho.[4] Worman merely asserts that the

---

[4] Worman does argue the conflict should be imputed to the entire USAO for the District of Idaho because conflicts of one lawyer in a *law firm* may sometimes be imputed to associated lawyers *at that law firm* under Idaho Rule of Professional Conduct 1.10. This argument is unavailing. The Idaho Rules of Professional Conduct regarding vicarious disqualification do not by their terms apply to government offices. The Ninth Circuit has generally refused to extend cases applying the imputed disqualification doctrine to government offices. *See United States v. Lorenzo*, 995 F.2d 1448, 1453 n.1. Moreover, comment 2 to Model Rule of Professional Conduct 1.11 expressly provides that "[b]ecause of the special problems

entire prosecution was improperly pursued by the USAO because of a relationship one AUSA—from an office that did not handle the case—purportedly had with the victim. But the idea that the entire United States Attorney's Office for the District of Idaho may not prosecute that crime simply because one AUSA from another office happens to know the victim is preposterous.

Furthermore, the facts of this case belie Worman's assertion that the Government's improperly pursued his prosecution. Complaint of the underlying crime was first brought by the victim to local law enforcement, then by local law enforcement to the FBI, then finally by the FBI to the CDA AUSA, who promptly disclosed the potential conflict and removed herself *and* her office from the case. Multiple degrees of separation from the victim's initial complaint and immediate recusal after notification hardly support the notion that the CDA AUSA improperly sought out the prosecution of this crime because of a personal relationship with the victim.

And even if such a relationship *might* have created a conflict, the Government took immediate and thorough action to prevent such a conflict from affecting the prosecution in this case. The CDA AUSA immediately notified the USAO and Special Agent Gunnerson of the potential conflict and instructed Gunnerson not to send any case information to the CDA branch. Out of an abundance of caution, the USAO recused the *entire* CDA branch— not just the CDA AUSA who personally knew the victim—from participating in this case.[5]

---

raised by imputation within a government agency," conflicts from one attorney are not imputed to an entire government office as they would be at a private law firm.
[5] Furthermore, it is not clear that disqualification would be required even if the CDA AUSA had not recused herself from the case. *See United States v. Lorenzo*, 995 F.2d 1452 (9th Cir. 1993) (affirming the district

The case was reassigned to the Boise office, and only attorneys from that office have handled the case since its inception.

In short, Worman has failed to show *any* factual predicate for blanket disqualification, let alone a strong one. He has not demonstrated that continued prosecution by the Boise division of the USAO for the District of Idaho would result in any kind of legal or ethical violation. Nor has Worman addressed, much less shown, why less intrusive remedies, such as the screening-off of the CDA AUSA that has already taken place, are "inadequate to safeguard against a legal violation" in this case. *Williams*, 68 F.4th at 564. Accordingly, the Court must DENY Worman's Motion.

## V. CONCLUSION

Worman has not met his burden of establishing disqualification is warranted in this case. This is especially true given the drastic nature of the relief he seeks—disqualification of the entire USAO for the District of Idaho—which is "an extreme remedy" that is only available in "the most extraordinary circumstances." *Id.* at 573. No such circumstances exist here, where the Government not only immediately recused the sole attorney who had any relationship with the victim, but also transferred the case to an entirely different branch. Accordingly, the Court DENIES Worman's Motion.

///

///

---

court's refusal to disqualify an entire USAO where the U.S. Attorney and multiple AUSAs were themselves victims of the defendant's crime).

## VI. ORDER

The Court HEREBY ORDERS:

1. Worman's Motion to Disqualify Counsel (Dkt. 29) is DENIED.

DATED: July 12, 2024

David C. Nye
Chief U.S. District Court Judge