UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>DOUGLAS WORMAN,<br><br>                    Defendant. | Case No. 2:23-cr-00136-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court are three Motions in Limine filed by the Government: a Motion to Exclude Expert Testimony (Dkt. 35), a Motion to Exclude Improper Defenses (Dkt. 36), and a Motion to Exclude Evidence of Recusal (Dkt. 37). Also before the Court is Defendant Douglas Worman's Motion to Quash. Dkt. 50.

In an effort to give the parties direction on the evidentiary issues that have been raised in the Motions, the Court will set forth its views on those matters and make rulings where possible based on the information presently before the Court. These rulings, however, are preliminary and may be subject to revision upon consideration of a particular evidentiary issue presented within the context of trial.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will rule on the Motions and Notices in this decision without oral argument. Dist.

Idaho Loc. Civ. R. 7.1(d)(2)(ii).[1]

For the reasons outlined below, the Court GRANTS the Government's Motion to Exclude Expert Testimony, GRANTS in part and DENIES in part the Government's Motion to Exclude Improper Defenses, and GRANTS the Government's Motion to Exclude Evidence of Recusal. The Court also DENIES Worman's Motion to Quash.

## II. BACKGROUND

Worman owns and operates Worman Forest Management, LLC ("WFM"), a limited liability company providing forestry services to various public and private entities. Worman's spouse owned CRW Resources, LLC ("CRW"), another forestry services limited liability company. Worman was a signer on several of CRW's bank accounts.

In 2015, Worman entered into a factoring agreement[2] with another business as the lender. From 2015 through at least September 2018, Worman's customers submitted invoices to him, and he submitted invoices to the lender for factoring.

From July 2018 through September 2018, Worman wrote checks between WFM's and CRW's bank accounts at two financial institutions—Mountain West Bank and Numerica Credit Union. Worman and his wife later obtained a loan on behalf of CRW

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice.").

[2] "Factoring" is a type of financing in which a private lender agrees to pay immediate cash to a business in exchange for the business's accounts receivable (at a discounted rate). The business submits invoices to the lender for factoring, and the lender immediately pays a percentage of the face value of the invoice. The lender then pays the remaining balance of the face value, less the lender's factoring fees, when the debt is collected.

MEMORANDUM DECISION AND ORDER - 2

from another financial institution, Carolina Bank.

In May 2023, Worman was indicted on seventeen counts of wire fraud, four counts of bank fraud, and one count of false statements to a bank or other federally insured institution. In the indictment, the Government asserts, generally, that Worman inflated and/or falsified invoices from subcontractors and vendors to artificially inflate his factoring requests, then received funds from the factoring lender for work he and his business did not actually perform. The Government also alleges that Worman engaged in check kiting[3] by writing checks between WFM and CRW bank accounts and taking advantage of the float time wherein the account balances appeared inflated. Finally, the Government alleges Worman concealed a material fact in his loan application to Carolina Bank, a federally insured financial institution. Worman has pleaded not guilty to the charges and denies any wrongdoing.

### III. LEGAL STANDARD[4]

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a

---

[3] "Check kiting" is a form of bank fraud where a party systematically deposits nonsufficient funds checks between two or more banks in order to take advantage of the float time between presentment of a check and actual receipt of funds by the bank. This is done to make use of non-existent funds in an account while the account balance appears inflated.

[4] The Court outlines the general motion-in-limine legal standard here. It will outline other motion-specific legal standards within the individual sections below.

MEMORANDUM DECISION AND ORDER - 3

procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "an in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (cleaned up) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. DISCUSSION

The Government has filed three Motions in Limine: a Motion to Exclude Expert Testimony, a Motion to Exclude Improper Defenses, and a Motion to Exclude Evidence of Recusal. The Court will address each Motion in turn. It will then address Worman's Motion to Quash.

**A. Government's Motion to Exclude Expert Testimony (Dkt. 35)**

In their first Motion, the Government seeks exclusion of Professor Morrissey as an expert witness pursuant to Federal Rules of Evidence 702, 704, 401, and 403.[5] More specifically, it asserts that Morrissey's expert testimony impermissibly instructs the jury on the law and usurps its role by applying the law to the facts of this case; incorrectly comments on a witness' credibility and Defendant's mental state; and is irrelevant and

---

[5] Professor Morrissey is a law professor who specializes in contracts, corporate, securities, and business law. He was hired by Worman to opine on Worman's dealings with Richards, including the factoring agreement and loan repayment agreement between them. Worman's findings are contained in a report at Docket 20-1.

MEMORANDUM DECISION AND ORDER - 4

unfairly prejudicial. Dkt. 35, at 9. The Court agrees.

First, Professor Morrissey's testimony intrudes upon both the roles of the Court and the jury by opining on the law applicable to this case and by applying the law to the facts. "It is well settled that the judge instructs the jury in the law." *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988), overruled on other grounds by *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997). Thus, "expert testimony is not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (cleaned up). Rather, the role of experts is to "interpret and analyze factual evidence." *Id*; *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle") (cleaned up).This rule makes good sense; as the Ninth Circuit has explained, "[t]he law would be in a curious state if jurors received their instructions on the law from an expert witness as well as from the trial judge." *Id.* at 497.

Furthermore, the Ninth Circuit "has repeatedly affirmed that an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (cleaned up). "This prohibition of testimony on an ultimate issue of law recognizes that when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Id.* (cleaned up, emphasis in original.)

Professor Morrissey's report both comments on the law and intrudes upon the jury's

role in applying the law to the facts of this case. For example, the Report includes the following statements:

- "Intent to defraud requires proof not only of the intent to deceive but also of the intent to cheat . . . . Here Worman was not cheating Richards." Dkt. 20-1, at 10–11.

- "Because it called for assignment of contracts from the federal government, the so-called 'Factoring Agreement' was illegal. As a nullity, any argument made under it such as invoices sent by Worman for payment to him from Richards were unenforceable." *Id.* at 9.

- "The dispute between Richards and Worman regarding payment owed under their factoring agreement was at best a civil contractual dispute not a violation of criminal law." *Id.* at 10.

- "[T]he tort law principle of 'violenti non fit injuria' applies, which means 'to one who consents no wrong is done.'" *Id.*

- "Worman therefore cannot be charged with fraud." *Id.* at 9.

- "[T]o sustain a claim for such promissory fraud, the government would have to show beyond a reasonable doubt that Worman had no intent to make [payments under the Factoring Agreement] when he signed that document." *Id.* at 11.

- "Worman did not intend to cheat Richards by gaining an unfair advantage on him." Dkt. 11.

MEMORANDUM DECISION AND ORDER - 6

- "Worman had no intent to cheat the bank, nor to deprive the bank of any value." *Id.* at 13.

- "For the reasons stated above it is my legal opinion that all the charges in the indictment against Mr. Worman are without legal merit." *Id.* at 14.

The foregoing examples (far from an exhaustive list) are rife with evidentiary defects that demonstrate the inadmissibility of Morrissey's report. Morrisey opines on the law regarding the elements of the crimes Worman is charged with, including the requisite intent. He applies that law to the facts of this case to draw legal conclusions regarding the legitimacy of the Factoring Agreement and the legal sufficiency of Worman's federal charges. Furthermore, Morrisey improperly opines on Worman's mental state and concludes that he lacked the intent necessary to result in a conviction in this case. Accordingly, the Court GRANTS the Government's first Motion (Dkt. 35) and will exclude the testimony and report of Morrisey.

**B. Government's Motion to Exclude Improper Defenses (Dkt. 36)**

In its next Motion, the Government seeks to exclude five categories of evidence and argument it anticipates the Defense will seek to introduce at trial. Specifically, the Government seeks to exclude evidence of: (1) justifiable reliance and damages; (2) materiality and proof of loss to a financial institution; (3) victim negligence, intentional disregard, prudence or intelligence;[6] (4) Worman's intent to repay a victim; and (5) contract law principles. The Court will address each argument in turn.

---

[6] Although the Government argues victim negligence or intentional disregard separately from prudence and intelligence in its Motion, the Court will address them jointly herein.

### i. Justifiable Reliance and Damages

First, the Government seeks to exclude evidence of justifiable reliance or damages. Worman responds that he does not intend to introduce any evidence of reliance or damages because such evidence is irrelevant. Indeed, both the Supreme Court and the Ninth Circuit have instructed that "the common-law requirements of justifiable reliance and damages . . . have no place in the federal fraud statutes." *Neder v United States*, 527 U.S. 1, 20 (1999); *see also United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) ("it is well-established that reliance is not a required element of wire fraud."). Because facts of any victim's justifiable reliance or damages are not of consequence in deciding whether Worman has satisfied the elements of the crimes he is charged with, such evidence is not relevant in this case. *See* Fed. R. Evid. 401, 402. The Court therefore GRANTS this portion of the Government's Motion.

### ii. Materiality and Proof of Loss

The Government next seeks to exclude any evidence that false statements made to any bank were not material, or that the bank was not actually influenced, misled, or exposed to a risk of loss because of Worman's false statements, because materiality and actual loss are not elements of false statements to a bank. Dkt. 36, at 2. Worman acknowledges that proof of loss is not an element of the crimes he is charged with, but contends that materiality is relevant (and even essential) to his defense.

While materiality is not an element of false statements to a bank, it is an element of bank fraud. *See* Ninth Circuit Model Criminal Jury Instruction 15.36 (2022 ed.) (listing as an element of bank fraud "that the statements made as part of the scheme [to defraud] were

MEMORANDUM DECISION AND ORDER - 8

*material*; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.") (emphasis added). Because of this, evidence of the materiality of any statements made by Worman to the banks involved in this case is relevant to his defense. The Court therefore DENIES this portion of the Government's Motion and will allow Worman to present evidence that goes to the materiality of his statements.[7]

Proof of loss is a different story. Because "wire fraud statutes do not proscribe only successful schemes," *United States v. Rude*, 88 F.3d 1538, 1547 (9th Cir. 1996), conviction for fraud "does not require that the victim suffered an actual loss, as long as the scheme was meant to cause a loss." *United States v. Panthaky*, 232 F. App'x 645, 648 (9th Cir. 2007). As the Court has discussed above, the Government is not required to prove damages as an element of any of the crimes with which it has charged Worman. This portion of the Government's Motion is GRANTED; any evidence or argument going to a lack of actual loss will be excluded.

    *iii.*    *Victim Negligence, Prudence, or Intelligence*

Next, the Government seeks to exclude any evidence that a victim was negligent or intentionally disregarded information, or that a victim was gullible, unsophisticated, or should have known of the fraud. Dkt. 36, at 2.

---

[7] The Court notes, however, that materiality is an objective standard. *See* Neder, 527 U.S. at 16 (finding that a statement made, or facts omitted in a scheme to defraud, are material if they have the natural tendency to influence, or are capable of influencing, the decisionmaker). Thus, while Worman may present evidence and argument regarding the objective materiality of his statements to financial institutions, he may not make argument regarding the actual subjective influence his statements had upon the victims in this case. *See Id.* at 25 ("the government does not have to prove actual reliance upon the defendant's misrepresentations" to prove materiality) (cleaned up).

Worman counters that evidence of Richards' involvement should be admitted because "Richards was not a victim by any stretch of the imagination." Dkt. 45, at 9. Rather, Worman argues that Richards "knew exactly what was happening, and condoned it anyway." *Id.* at 11.

The Ninth Circuit has established that someone who engages in intentional fraudulent conduct cannot be absolved of guilt by arguing that the victim of his or her conduct acted negligently or even with intentional disregard, thereby facilitating the fraudster's actions. *United States v. Lindsey*, 850 F.3d 1009, 1013–18 (9th Cir. 2017) ("Two wrongs do not make a right, and lenders' negligence, or even intentional disregard, cannot excuse another's criminal fraud.").

It may be the case that Richards turned a blind eye to facts that may have suggested fraud. But Worman's contention that Richards "could not have been deceived or cheated" because he "allowed invoices to flow to him for four years" is unavailing. Dkt. 45, at 10. The Ninth Circuit has foreclosed the presentation of evidence that a victim "allowed" himself to be defrauded. Accordingly, the Court will preclude any evidence or argument that Richards (or any other victim of Worman's alleged fraud) failed to detect the fraud sooner, or for intentionally disregarding facts that may have suggested fraud. In short, Worman may not introduce any evidence or argument that constitutes victim blaming. This portion of the Government's Motion is GRANTED.

   *iv. Defendant's Intent to Repay*

Fourth, the Government seeks to exclude any evidence or argument regarding the Defendant's intent to repay any victim in this case. Dkt. 36, at 2.

MEMORANDUM DECISION AND ORDER - 10

Worman counters that he should be allowed to present testimony, argument, and evidence related to whether the alleged victims in this case were paid because such evidence is relevant to the element of intent to defraud. As it relates to the bank fraud charges, Worman specifically argues that the fact that Worman promptly repaid the banks after checks bounced demonstrates a lack of intent to defraud them. Dkt. 45, at 11. But as the Ninth Circuit has repeatedly held, intent to repay is not a defense to fraud. "[T]he intended deprivation under [wire fraud] need not be a *permanent* taking away of money or property. One can intentionally deprive another of property while at the same time intending to restore it at a later date." *United States v. Treadwell*, 593 F.3d 990, 996–98 (9th Cir. 2010) (emphasis in original, cleaned up) (overruled on other grounds by *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020). Thus, "[w]hile an honest, good-faith belief in the truth of the misrepresentations may negate an intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986).

Because the Ninth Circuit has instructed intent to repay is not a defense to fraud, the Court GRANTS this portion of the Government's Motion, and will exclude all evidence of Worman's intent to repay the victims in this case.

    v.  *Contract Law Principles*

Finally, the Government seeks to exclude any evidence or argument regarding contract law principles. Specifically, the Government argues that the potential availability of civil remedies for breach of contract is not relevant to the criminal charges in this case.

For context, the Court provides additional background regarding the contractual

MEMORANDUM DECISION AND ORDER - 11

agreement relevant here. In September 2018, Worman and Richards agreed to execute (and did execute) an Agreement for Repayment and Acknowledgment of Money Owed ("Repayment Agreement"). According to the terms of the Repayment Agreement, Worman agreed to repay $3,175,739.60 in weekly payments of $25,000 plus interest to Richards' company. Worman also agreed to assign the accounts receivable on his contracts to Richards. However, some of Worman's accounts were federal contracts, and federal law prohibits the transfer of federal contracts. 41 U.S.C. § 6305(a).

Worman contends that this prohibition on transfer renders the Repayment Agreement a categorically invalid or "illegal" contract. Because of this, Worman argues the charges for false statement to a bank must fail, because Worman was not required to disclose an illegal and therefore invalid loan obligation on his loan application to Carolina Bank. Accordingly, he contends that his failure to disclose the three-million-dollar Repayment Agreement does not satisfy the elements of false statement to a bank.

The elements of False Statements to a Bank or Other Federally Insured Institution in violation of 18 U.S.C. § 1014 are as follows:

1. First, the defendant made a false statement or report to a federally insured bank;

2. Second, the defendant made the false statement or report to the bank knowing it was false; and

3. Third, the defendant did so for the purpose of influencing in any way the action of the bank.

Ninth Circuit Model Criminal Jury Instruction 15.41 (2022 ed.).

The Ninth Circuit has made clear that the availability of civil remedies does not

immunize fraudulent conduct from criminal prosecution. For example, in *United States v. Ali*, the defendants argued that a dispute stemming from a contractual breach was not grounds for wire fraud. The Ninth Circuit disagreed, finding that the "fact that [a party] may have brought a civil contract claim against Defendants does not immunize Defendants' conduct from criminal prosecution if that conduct meets the criminal statutes as well." 620 F. 3d 1062, 1071 (9th Cir. 2010).

On this point, the Court agrees with the Government. Worman may not present evidence or argument to suggest that because a victim may have pursued civil remedies from Worman under the Repayment Agreement, his criminal prosecution is improper. Worman may not suggest that contract law applies to the charges here, or that this case should be a civil matter because it involves a potential breach of contract.

That said, the legal validity of the contractual Repayment Agreement between Worman and Richards is relevant to both the first and second elements of false statement to a bank. It is not beyond the realm of possibility that Worman at least believed he had no obligation to disclose what he considered an invalid loan obligation to Carolina Bank. And, importantly, such a determination regarding Worman's knowledge of the falsity of his application is not the Court's to make. That question is one for the jury to resolve. Because of this, Worman may present contractual evidence and argument that goes to the validity of the Repayment Agreement for purposes of establishing his disclosure obligations to Carolina Bank.

This portion of the Government's Motion is GRANTED in PART and DENIED in PART as outlined.

MEMORANDUM DECISION AND ORDER - 13

**C. Government's Motion to Exclude Evidence of Recusal (Dkt. 37)**

The Government also moves to exclude evidence and argument regarding the recusal of the Coeur d'Alene branch of the United States Attorney's Office for the District of Idaho in this case. The Government's argument is twofold: first, it contends that such evidence is not relevant to this case; second, it alternatively argues that even if the evidence was relevant, it should still be excluded because it is unduly prejudicial.

Worman responds that he does not intend to introduce evidence relating to a personal relationship between a Couer d'Alene AUSA and the alleged victim to prove selective or vindictive prosecution. However, he contends he should be allowed to "pursue questioning about a particular witness' bias should such bias become pertinent to the evidence introduced by the government." Dkt. 46, at 3. Because the necessity of such questioning will not be known until witnesses take the stand and evidence is developed, Worman requests that the Court withhold ruling on this issue until trial. *Id.* at 7.

Generally, under the Federal Rules of Evidence, any evidence that is relevant is admissible unless proscribed by the Constitution, federal statute, or any other federal rule. Fed. R. Evid. 402. Evidence is considered relevant if it makes any fact of consequence in determining the action more or less probable than it would be in the absence of the evidence. Fed. R. Evid. 401.

Rule 403 allows for the exclusion of relevant evidence if the court finds that its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Ninth Circuit defines "unfair prejudice" as

"an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2014) (cleaned up).

The Court agrees with the Government that its alleged motive in bringing charges against a defendant is irrelevant to guilt. Further, the Court has already ruled that any potential conflict stemming from a personal relationship between a Coeur d' Alene AUSA and the victim was properly contained and has not resulted in any impropriety in the prosecution of this case. *See generally* Dkt. 42. Worman may not reopen that issue by suggesting to the jury that the Government's investigation was motivated or in any way affected by the AUSA's relationship with the victim. Any evidence of prosecutorial bias has no bearing on those issues properly before the jury, including the credibility of the witnesses. Worman is free to cross-examine the Government's witnesses to assess their credibility and reliability, for example, by questioning the accuracy and methods of an investigator's calculations. But he may not use his cross-examination to introduce evidence suggesting prosecutorial impropriety. Accordingly, the Court GRANTS the Government's Motion to Exclude Evidence of Recusal.[8]

### D. Worman's Motion to Quash (Dkt. 50)

Worman asks the Court to quash the subpoena served by the Government on William Long, an investigator hired by Worman to investigate this case. Worman argues that "[c]alling Mr. Long would be analogous to calling Mr. Worman's attorneys Ms. Bolton

---

[8] If Worman believes the Government "opens the door" to this subject during trial testimony, he may request a hearing outside the presence of the jury to evaluate the matter.

and Ms. Ogborn, or any of the legal staff at Bolton Law who have assisted in this case." Dkt. 50, at 2. The Government counters that no attorney-client privilege applies to Long's investigation, and that even if such a privilege applied, it has been waived here because Long disclosed his findings to the Government. *See generally* Dkt. 61.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The attorney-client privilege may also extend to communications with third parties "acting as an agent" of the client. *United States v. Landoff*, 591 F.2d 36, 39 (9th Cir. 1978). The party asserting this privilege bears the burden of proving every element of an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (cleaned up).

The key issue here is confidentiality: were the communications from Investigator Long made in confidence and permanently protected from disclosure? The Court finds that they were not. On the contrary, Long's investigation was made for the express purpose of providing information to the Government. *See* Dkt. 32-3, at ¶ 9 (Long stating "I understood that my report would be provided to [the Government] as part of the pre-trial resolution discussions."). Long's investigation was conducted with disclosure in mind, and disclosure did, in fact, occur here. Thus, while the report itself is not admissible because it formed a part of plea negotiations, Long's investigation is not protected by the attorney-client

privilege, and he may testify thereto. The Court therefore DENIES Worman's Motion to Quash, noting that any testimony offered by Long at trial is subject to the limitations in the Court's Order on Worman's Motion to Exclude Statements (Dkt. 39).

## V. CONCLUSION

In conclusion, the Court GRANTS the Government's Motion to Exclude Expert Testimony. It GRANTS in part and DENIES in part the Government's Motion to Exclude Improper Defenses, as outlined herein. It GRANTS the Government's Motion to Exclude Evidence of Recusal. Finally, the Court DENIES Worman's Motion to Quash.

## VI. ORDER

**IT IS HEREBY ORDERED:**

1. The Government's Motion to Exclude Expert Testimony (Dkt. 35) is GRANTED.

2. The Government's Motion to Exclude Improper Defenses (Dkt. 36) is GRANTED in part and DENIED in part, as outlined above.

3. The Government's Motion to Exclude Evidence of Recusal (Dkt. 37) is GRANTED.

4. Worman's Motion to Quash is DENIED.

DATED: August 1, 2024

David C. Nye
Chief U.S. District Court Judge